IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                         |   |                         |
|-------------------------|---|-------------------------|
| PHILIP SWABY,           | * |                         |
|     Plaintiff,          | * |                         |
|                         | * |                         |
|         v.              | * | CIVIL NO.:    WDQ-15-857 |
|                         |   | CRIMINAL NO.: WDQ-11-0607|
| UNITED STATES OF AMERICA,| * |                        |
|     Defendant.          | * |                         |
|                         | * |                         |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Philip Swaby pled guilty to one count of trafficking in counterfeit goods.[1] *United States v. Swaby*, Crim. No. WDQ-11-0607 (D. Md. Feb. 25, 2013) (ECF No 40).  He was sentenced to 364 days imprisonment.  *Id*. (ECF No. 46).  Pending is Swaby's petition for a writ of error *coram nobis*.  ECF No. 1.[2]  No hearing is necessary.  Local Rule 105.6 (D. Md. 2014).[3]  For the following reasons, Swaby's petition will be denied.

---

[1] 18 U.S.C. § 2320(a)(1)(2006 & Supp. IV 2011).

[2] Unless otherwise indicated, citations to electronically filed documents refer to Swaby's civil case, *Swaby v. United States*, Civil No. WDQ-15-857 (D. Md.).

[3] A hearing is unnecessary because Swaby's petition fails for lack of prejudice; to determine prejudice, the Court must consider its exchanges with Swaby during his Rule 11 plea proceeding.  *See United States v. Akinsade*, 686 F.3d 248, 253 (4th Cir. 2012).  The content of Swaby's plea proceeding, which has been established by official transcript, is not in dispute. *See Swaby*, Crim. No. WDQ-11-0607 (ECF No. 66).  Although Swaby and his counsel in his criminal case, Peter Ward, Esq., have submitted affidavits that differ about what Ward purportedly told Swaby about his risk of deportation, the factual

I.   Background[4]

Swaby and his wife, Yoncra Robinson,[5] owned and operated a Baltimore, Maryland store called "Fashion Trendz."  Plea at 9. From March 2011 to May 2011, Swaby and Yoncra trafficked and sold counterfeit purses, handbags, shirts, jewelry, and hats bearing Coach, Gucci, Versace, Louis Vuitton, and Chanel trademarks.  *Id.*  On May 12, 2011, federal and state law enforcement agent executed search warrants at Fashion Trendz and seized several counterfeit items.  *Id.*  Swaby was Mirandized and admitted aiding and abetting the trafficking of counterfeit goods and driving a van to New York City to aid and abet another person to purchase counterfeit goods and transporting them back to Maryland.  *Id.*  On November 10, 2011 Swaby was indicted on one count of conspiracy to traffic in counterfeit goods in violation of 18 U.S.C §§ 371, 2320(a)(1) and one count of trafficking in counterfeit goods in violation of 18 U.S.C. §

_____

differences are not critical to this Court's decision.  Even assuming that Ward's version is true, the Court finds that he rendered deficient performance in his representation of Swaby. *See infra* Section II.B.1.

[4] The facts are from affidavits filed by Swaby (unsworn) ("Swaby Aff.") and Ward (sworn)("Ward Aff."), the plea agreement ("Plea"), and the transcript of Swaby's plea colloquy ("Plea Tr.").

[5] Robinson, Swaby's codefendant, also pled guilty to one count of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a)(1).  *See United States v. Robinson*, Crim. No. WDQ-11-0607 (D. Md. Feb. 25, 2013) (ECF No. 37).

2320(a)(1).  *Swaby*, Crim. No. WDQ-11-0607 (D. Md. Nov. 10, 2011)

(ECF No. 1).[6]

On October 25, 2012, the Office of the Criminal Justice Act

Coordinating Attorney contacted Ward and asked him to represent

---

[6] When Swaby committed the offense to which he pled guilty (count
two of the indictment), 18 U.S.C. § 2320(a)(1) provided:

> Whoever; intentionally traffics or attempts to traffic
> in goods or services and knowingly uses a counterfeit
> mark on or in connection with such goods or services,
> or intentionally traffics or attempts to traffic in
> labels, patches, stickers, wrappers, badges, emblems,
> medallions, charms, boxes, containers, cans, cases,
> hangtags, documentation, or packaging of any type or
> nature, knowing that a counterfeit mark has been
> applied thereto, the use of which is likely to cause
> confusion, to cause mistake, or to deceive, shall [be
> guilty of a crime].

*See* 18 U.S.C. § 2320(a)(1)(2006 & Supp. IV 2011).  On December
31, 2011, the current version of 18 U.S.C. § 2320(a) went into
effect, which provides:

> Whoever intentionally--
> (1) traffics in goods or services and knowingly uses a
> counterfeit mark on or in connection with such goods
> or services, [or]
> (2) traffics in labels, patches, stickers, wrappers,
> badges, emblems, medallions, charms, boxes,
> containers, cans, cases, hangtags, documentation, or
> packaging of any type or nature, knowing that a
> counterfeit mark has been applied thereto, the use of
> which is likely to cause confusion, to cause mistake,
> or to deceive [shall be guilty of a crime].

*See* 18 U.S.C. § 2320(a)(2006 & Supp. V 2012); Pub. L. No. 112-
81, § 818, 125 Stat. 1493, 1497 (2011).  Count two of Swaby's
indictment charged him with trafficking in goods and knowingly
using counterfeit marks "in connection with such goods, the use
of which counterfeit marks were likely to cause confusion, to
cause mistake, and to deceive."  *Swaby*, Crim. No. WDQ-11-0607
(D. Md. Nov. 10, 2011) (ECF No. 1 at 5).

3

Swaby.  Ward Aff. at 1.  That day, Ward met Swaby in the U.S.
Marshal's lockup, and learned that Swaby had been born in
Jamaica and was a United States permanent resident.  *Id*. at 2.[7]
Ward "immediately recognized that his immigration status would
be a significant consideration in the resolution of his
charges."  *Id*.  Also that day, Swaby appeared before U.S.
Magistrate Judge Susan K. Gauvey and was released.  *Id*.  On
October 31, 2012, Ward "conducted an extensive interview" of
Swaby and learned "that he held a Green Card and intended to
apply for U.S. Citizenship."  *Id*.

On January 28, 2013, Ward spoke with the Assistant U.S.
Attorney prosecuting Swaby's criminal case, Justin Herring, Esq.
*Id*. at 3.  Herring stated that he was drafting a plea agreement
setting the loss amount as between $10,000 and $30,000, though
it could have been as much as $70,000.  *Id*.  Herring explained
that the "'primary driver' of the loss value was the number of
counterfeit labels recovered, each of which has the value of the
completed (or genuine) product."  *Id*.

On February 14, 2013, Ward contacted Herring and discussed
Swaby's "immigration problem."  *Id*. at 4.  That day, the parties
participated in a conference call with this Court; Herring told
the Court that Robinson had signed a plea agreement but that

---

[7] Swaby has been a permanent resident since June 2001.  Swaby
Aff. ¶ 3.

Swaby had not. *Id.* Ward explained that Swaby had an

"immigration issue." *Id.* Also that day, Ward emailed Mary Ann

L. Berlin, Esq., a Baltimore attorney specializing in

immigration law. *Id.*; *see also* Ward Aff. Ex. E (Ward's email to

Berlin noting Swaby's concerns that accepting a plea would

affect his immigration status, and attached the government's

proposed statement of facts).[8]

On February 15, 2013, Ward emailed Swaby and told him to

arrange an appointment to meet with Berlin. Ward Aff. at 4;

Ward Aff. Ex. F. On February 19, 2013, Ward faxed Berlin

Swaby's indictment and copies of the relevant criminal statutes,

18 U.S.C. §§ 2 and 2320. Ward Aff. at 4.[9] That day, Berlin met

with Swaby. Ward Aff. Ex. H.

On February 21, 2013, Berlin emailed Ward and Swaby her

opinion on the effect of Swaby's guilty plea on his immigration

status. *Id.* She explained that if Swaby received a sentence of

---

[8] Swaby avers that Ward told him that "he was not familiar with
Immigration Law issues but would seek advice on how any
conviction would impact [his] continued status as a lawful
permanent resident." Swaby Aff. ¶ 4. Ward denies Swaby's
averment, and states that he told Swaby that he "was not an
immigration law expert, but that [he] knew enough about
immigration law that [he] ought to have him consult an expert in
that field." Ward Aff. at 6. A February 15, 2015 email from
Ward to Swaby states: "When we last met I told you I was going
to consult with an immigration law expert about the possible
effect of a conviction . . . ." Ward Aff. Ex. F.

[9] Ward attached to his affidavit the fax cover page but not the
items sent to Berlin. *See* Ward Aff. Ex. G.

more than 364 days, he would be considered an aggravated felon

and would be removable.  *Id.*  She further explained that:

> [i]f he receives a sentence of under one year[,] the
> question becomes is he removable for a crime of moral
> turpitude.  In this scenario the crime had to have
> been committed within [five] years of entry.  Since
> 2001 was his original entry date[,] the commission of
> this crime was far past [five] years.
>
> Aiding and Abetting is perhaps a safer plea.  The
> sentence MUST be under a year.  The [D]epartment of
> Homeland Security [("DHS")] would again argue it is
> still a crime of moral turpitude and again we would
> raise the argument [that it was] not committed within
> [five] years.

*Id.*  Berlin advised that if Swaby had to plead guilty to a

violation of 18 U.S.C. § 2320(a), subsection (a)(1) is

preferable to subsection (a)(2) because subsection (a)(2)

includes "intent to deceive" language.  *Id.*  Berlin further

recommended removing "intent to deceive language from the

proposed stipulated facts" and seeking a loss amount of less

than $10,000.  *Id.*  She noted that DHS could seek removal under

the Immigration and Nationality Act § 101(a)(43)(M)[10] for an

offense involving fraud or deceit when the loss exceeds $10,000.

*Id.*  Berlin concluded that "the most important point is 'a

sentence of under one year.'"  *Id.*

---

[10] *See* 8 U.S.C. § 1101(a)(43)(M)(i)(2006)(an aggravated felony
includes an offense that "involves fraud or deceit in which the
loss to the victim or victims exceeds $10,000"); *see also* 8
U.S.C. § 1227(a)(2)(A)(iii) (2006)("Any alien who is convicted
of an aggravated felony at any time after admission is
deportable.").

On February 22, 2013, Ward emailed Herring suggested
changes to the plea agreement and statement of facts based on
Berlin's opinion.  Ward Aff. at 5.  Ward requested specifying
that Swaby was pleading guilty to aiding and abetting a
violation of 18 U.S.C. § 2320(a)(1) and not § 2320(a)(2) "to
distinguish the plea from one under (a)(2) because that sub-
section uses the word 'deceive,' which would raise immigration
issues."  Ward Aff. Ex. I.  Ward further requested that a
sentence in the statement of facts be deleted to omit reference
to "confusion," "mistake," or "deceive."  Ward Aff. Ex. J at 1.
Herring responded that he could "do the plea under 2320(a)(1),"
but could not "do the plea under aiding and abetting."  *Id.*  He
further stated that he would omit "confusion and deceive" from
the statement of facts but would retain "mistake" because "it is
necessary to note that the counterfeit trademarks are suff-
iciently similar to the real marks to 'cause mistake.'"  *Id.*
Herring "declined to lower the loss amount below $10,000."  Ward
Aff. at 6.

On February 23, 2013, Ward contacted Swaby to discuss the
revised plea agreement and statement of facts, and then
telephoned Herring to inform him that Swaby had agreed to the
plea offer.  *Id.* at 5.

Swaby avers that Ward never advised him that a guilty plea
resulting in imprisonment for less than one year could harm his

7

immigration status or that an order of restitution for more than
$14,000 could trigger deportation.  Swaby Aff. ¶¶ 9-10.  Swaby
"would not have entered a guilty plea" if he had known of the
immigration consequences and "would have vigorously fought" the
amount of restitution ordered.  *Id.* ¶ 11.  He "had good
defenses" against the seizure of goods (which determined the
amount of loss) because the government had placed a warrantless
tracking device on a car in which he had traveled.  *Id.* ¶ 12.
Ward denies Swaby's averment that Ward told him if he "received
a sentence of under 365 days, [he] would not have any problems
with [his] immigration status."  Ward Aff. at 5-6; Swaby Aff. ¶
5.  Ward avers that the government had "a very strong case" and
had Swaby gone to trial, "he would almost certainly [have] been
convicted."  Ward Aff. at 5.  Ward told Swaby that if he had
been convicted at trial, he would have faced a longer sentence
and "inevitable deportation."  *Id.* at 6.  However, if he pled
guilty, his 364 day sentence "would not trigger deportation" and
Swaby could then "hop[e] that [DHS] would not invoke . . . the
loss issue."  *Id.*

On February 25, 2013, Swaby signed the plea agreement and
appeared before this Court for rearraignment.  Plea at 10;
*Swaby*, Crim. No. WDQ-11-0607 (ECF No. 36).  The plea agreement
stated that:

8

[b]y pleading guilty, the Defendant will also be
giving up certain valuable civil rights and *may be
subject to deportation or other loss of immigration
status*. The Defendant recognizes that if he is not a
citizen of the United States, *pleading guilty may have
consequences with respect to his immigration status*.
Under federal law, conviction for a broad range of
crimes can lead to adverse immigration consequences,
*including automatic removal* from the United States.
Removal and other immigration consequences are the
subject of a separate proceeding, however, and *the
Defendant understands that no one, including his
attorney or the Court, can predict with certainty the
effect of a conviction on immigration status*.
Defendant nevertheless affirms that he wants to plead
guilty regardless of any potential immigration
consequences.

Plea at 3 (emphasis added).

During rearraignment, the Court told Swaby that he "may be
essentially doing something that will lead to your deportation
or removal from the United States. This guilty plea might also
affect your ability to ever become a citizen of the United
States. Do you understand that, sir?" Plea Tr. at 8:22-9:2.[11]
Swaby responded, "[y]es, Your Honor." *Id*. at 9:3. The Court
further informed Swaby that:

A felony conviction may deprive you of the right to
vote, the right to serve on a jury, to lawfully own a
gun, or to hold public office. A felony conviction, as
either a citizen or non-citizen, may affect your
ability to receive government benefits, such as

---

[11] The government states that the rearraignment transcript had
been attached to its response as Gov. Ex. B. *See* ECF no. 12 at
3 n.2. However, the government attached the transcript of
Swaby's June 5, 2013 sentencing. *See* ECF No. 12-2 (marked as
"Exhibit B"). The transcript of Swaby's rearraignment is
available at *Swaby*, Crim. No. WDQ-11-0607 (D. Md. Feb. 25, 2013)
(ECF No. 66).

> housing or education loans, assistance, or grants. As
> a citizen or non-citizen, a felony conviction may mean
> that you cannot get or keep certain jobs or
> professional licenses.  It will certainly mean that
> you will receive harsher sentences in the future if
> you commit other crimes in the future, and, *as I
> indicated to you, Mr. Swaby, a felony conviction may
> mean that you will be removed from the United States*.
> It may also mean that you will be unable to become a
> United States citizen.

*Id*. at 19:23-20:11 (emphasis added).  When the Court asked if

Swaby understood "these other things that will happen as a

result of your guilty plea?," Swaby responded, "[y]es, Your

Honor."  *Id*. at 20:11-14.  Ward informed the Court that he is

> not an expert in [the] field [of immigration law];
> however, [he had] arranged for Mr. Swaby to be
> interviewed by a Mary Ann Berlin, Esquire, who is an
> Immigration expert practicing only in that field in
> Baltimore City, and I supplied her with copies of the
> Indictment and the necessary statement of facts and so
> forth, and the factors in the plea were arrived at in
> discussions I had with Mr. Herring in partial reliance
> upon the advice given to me by Ms. Berlin, and of
> course I discussed those factors with Mr. Herring,
> Mr. Swaby himself.

*Id*. at 23:18-24:4.  Herring stated that neither he nor the Court

could promise or predict the immigration consequences of Swaby's

guilty plea.  *Id*. at 24:22-25:3.  Ward responded that he had not

meant to suggest otherwise, and he had told Swaby that Berlin's

opinions "were not writ in stone," and that removal might be

"something that we [would] have to deal with down the road if it

ever came up."  *Id*. at 25:4-8.  The Court emphasized that Swaby

must understand that "there may be some risk . . . of

10

deportation," and that he must "enter[]the agreement with that understanding." *Id*. at 25:8-15. Ward responded, "Yes," and "Exactly, Your Honor." *Id*. at 25:11-16.

On June 5, 2013, the Court sentenced Swaby to 364 days imprisonment and ordered him to pay $14,220.00 in restitution. *Swaby*, Crim. No. WDQ-11-0607 (D. Md. June 5, 2013) (ECF No. 48). When Swaby completed his sentence, he learned that DHS had lodged an immigration detainer against him and sought to deport him on the basis of the amount of loss involved in Swaby's offense. ECF Nos. 1 ¶ 8; 1-1 at 2. Since November 2014, Swaby has been held by Immigration and Customs Enforcement ("ICE") at the Farmville, Virginia Detention Center. ECF No. 5 ¶ 3.

On March 24, 2015, Swaby filed a petition for a writ of error *coram nobis* seeking vacatur of his conviction. ECF No. 1. On June 18, 2015, the Court granted the government's motion for an order directing Ward to file an affidavit responding to Swaby's allegations of ineffective assistance of counsel. ECF No. 8. On July 20, 2015, Ward filed an affidavit. ECF No. 11. On July 27, 2015, the government opposed Swaby's petition. ECF No. 12. Swaby has not replied.[12]

---

[12] Swaby's reply had been due on August 10, 2015; to date, he has not filed a reply.

II.  Analysis

   A.   Writ of Error *Coram Nobis*

   "The writ of *coram nobis* is an ancient common-law remedy designed to correct errors of fact." *United States v. Denedo*, 556 U.S. 904, 910, 129 S. Ct. 2213, 2220, 173 L. Ed. 2d 1235 (2009) (internal quotation marks omitted).  "[A]uthority to grant a writ of *coram nobis* is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'"  *Id*. at 911, 129 S. Ct. at 2221 (*quoting* 28 U.S.C. § 1651(a)).  The writ of error *coram nobis* is "a remedy of last resort"; relief is available when "an error is of the most fundamental character and there exists no other available remedy."  *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012) (internal quotation marks omitted).  To succeed, Swaby must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character."  *Id*. (*quoting Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)).

   Here, Swaby cannot seek relief under the "more usual remed[ies]"  because he is no longer in custody.  *See* 28 U.S.C.

12

§ 2255.  Additionally, "valid reasons exist for not attacking the conviction earlier" because until Swaby was detained by ICE in November 2014, he had no reason to challenge his conviction. *Akinsade*, 686 F.3d at 252.  As to the third requirement, "the risk of deportation is an adverse consequence of conviction sufficient to create a case or controversy as required by Article III of the Constitution." *Id.*  Accordingly, the Court must assess Swaby's ineffective assistance of counsel claim to determine whether there was an error "of the most fundamental character." *See id.*

B.    Ineffective Assistance of Counsel

To prove ineffective assistance, Swaby must show that: (1) counsel's performance was deficient, and (2) the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

1.    Deficient Performance

To show deficient performance, Swaby must establish that Ward made errors so serious that the "representation fell below an objective standard of reasonableness." *Id.* at 688.  There is "a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct." *Kratsas v. United States*, 102 F. Supp. 2d 320, 322 (D. Md. 2000) *aff'd,* 9 F. App'x 107 (4th Cir. 2001) (*citing id.* at 688-89).

As discussed above,[13] on December 31, 2011--after Swaby's commission of the offense of conviction but before Ward had been appointed and apparently unbeknownst to Ward--an amended version of 18 U.S.C. § 2320(a) went into effect.  The amended version separated § 2320(a)(1) into two sections, creating a new subsection (a)(2) that referred to confusion, mistake, or deception, which had previously been part of subsection (a)(1). *Compare* 18 U.S.C. § 2320(a)(1)(2006 & Supp. IV 2011) *with* 18 U.S.C. § 2320(a)(2006 & Supp. V 2012).  It is unclear what version of 18 U.S.C. § 2320(a) Ward sent to Berlin when he sought her advice;[14] however, Berlin's response clearly indicates that she had relied on the amended version *inapplicable to Swaby's case*. *See* Ward Aff. Ex. H (email from Berlin to Ward and Swaby) (recommending that Swaby plead guilty to § 2320(a)(1) because it lacked the "intent to deceive" language found in § 2320(a)(2)); *see also Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 946, 117 S. Ct. 1871, 1876, 138 L. Ed. 2d 135 (1997) (legislation is presumptively *not* retroactive unless "Congress has clearly manifested its intent to the contrary").[15]

---

[13] *See supra* note 6.

[14] *See supra* note 9 and accompanying text.

[15] Nothing in the amendment indicates that Congress intended the changes to apply retroactively.  *See generally* Pub. L. No. 112-81, § 818, 125 Stat. 1493, 1497-1501 (2011).

Accordingly, Berlin's email (and, by extension, Ward's advice) would have led Swaby to believe that by pleading guilty to an offense under § 2320(a)(1) he would not be admitting an offense that involved deception. *See* Plea Tr. at 23:18-24:4 (Ward's statement to the Court that "factors in the plea" discussed with Swaby had been arrived at in "partial reliance" on Berlin's advice). Relying on Berlin's advice, Ward had asked Herring to specify in the plea agreement that Swaby was pleading guilty to aiding and abetting a violation of § 2320(a)(1) and not § 2320(a)(2) "to distinguish the plea from one under (a)(2) because that sub-section uses the word 'deceive,' which would raise immigration issues." Ward Aff. Ex. I. Although Herring declined to agree to a plea of aiding and abetting, he agreed to "do the plea under [§]2320(a)(1)." Ward Aff. Ex. J at 1.[16]

However, because the version of § 2320(a)(1) under which Swaby had been charged contained the term "deceive" that Ward

---

[16] Swaby, however, had never been charged under 18 U.S.C. § 2320(a)(2), which, when he had committed the offense and been indicted, provided for an increased penalty when the trafficking in counterfeit goods resulted in "[s]erious bodily harm or death." *See* 18 U.S.C. § 2320(a)(2)(2006 & Supp. IV 2011); *Swaby*, Crim. No. WDQ-11-0607 (D. Md. Nov. 10, 2011) (ECF No. 1). It is unclear whether, when Ward emailed Herring, Herring had similarly mistaken the applicable statutory provisions and believed that Swaby *could* plead guilty to a violation of § 2320(a)(2), or whether he simply had agreed to "do the plea" under the provision under which Swaby had been charged. However, the Court need not resolve that issue; Herring's performance is not at issue, and Herring had not been obliged to correct Ward's legal error.

had sought to avoid, Swaby unknowingly pled guilty to an offense involving deception.[17]   Because Swaby's offense involved more than $10,000 in loss to victims, Swaby pled guilty an aggravated felony that rendered him removable.   *See* 8 U.S.C. § 1101(a)(43)(M)(i)(an offense involving deceit and more than $10,000 in loss to victims is an "aggravated felony"); 8 U.S.C. § 1227(a)(2)(A)(iii)(providing for deportation of aggravated felons).[18]

---

[17] Thus, contrary to Ward's averment, Swaby would not have fully understood "his deportation risk."   *See* Ward Aff. at 6.

[18] Even had Swaby pled guilty to the current version of § 2320(a)(1) he would have pled guilty to a deportable offense: the current version of § 2320(a)(1) bars the trafficking and knowing use of a "counterfeit mark," which is defined as "a spurious mark . . . the use of which is likely to cause confusion, to cause mistake, *or to deceive*."   18 U.S.C. § 2320(f)(1)(A)(iv).

In 2008, the Western District of Pennsylvania confronted the issue of whether the version of § 2320(a) in effect in 2000 was an offense involving "fraud or deceit" under 8 U.S.C. § 1101(a) (43)(M)(i), thus rendering the petitioner ineligible for U.S. citizenship.   *See Dolgosheev v. U.S. Citizenship & Immigration Servs.*, No. CIV.A. 07-1019, 2008 WL 2950766, at *1 (W.D. Pa. July 25, 2008).   In 2000, § 2320(a) provided: "[w]hoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services shall [be guilty of a crime]."   18 U.S.C. § 2320(a)(2000).   Like the current version of § 2320(a)(1), the statute addressed in *Dolgosheev* did not contain the word "deceive."   Relying on the definition of "counterfeit mark" as a "spurious mark . . . likely to . . . deceive" and "common meanings of 'deceit' and 'counterfeit,'" the Court concluded that trademark counterfeiting under § 2320(a) included "an element of 'deceit.'"   *Dolgosheev*, 2008 WL 2950766, at *9.   Since Swaby's conviction, another Court has also concluded that a conviction under the same version of

The question, however, is whether Ward's performance was constitutionally deficient.  When "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence[,] . . . false assurance[s] that [a] conviction would not result in his removal" renders performance deficient.  *Padilla v. Kentucky*, 559 U.S. 356, 368, 130 S. Ct. 1473, 1483, 176 L. Ed. 2d 284 (2010).[19]  When "the deportation consequences of a particular plea are unclear or

---

§ 2320(a) involved fraud or deceit.  *See Wang v. Mayorkas*, No. C12-06367 LB, 2013 WL 6577049, at *9 (N.D. Cal. Dec. 13, 2013)(rejecting petitioner's argument that the definition of "counterfeit mark" was divisible in terms of one's use of a "'spurious mark' that is likely *either* 'to cause confusion,' 'to cause mistake,' *or* 'to deceive'").  *Wang* partially relied on the U.S. Supreme Court's in *Kawashima v. Holder*, 132 S. Ct. 1166, 1172, 182 L. Ed. 2d 1 (2012), which stated that 8 U.S.C. § 1101(a) (43)(M)(i) "is not limited to offenses that include fraud or deceit as formal elements. Rather, Clause (i) refers more broadly to offenses that 'involv[e]' fraud or deceit— meaning offenses with elements that necessarily entail fraudulent or deceitful conduct."  *See Wang*, 2013 WL 6577049, at *7.

[19] The Fourth Circuit has similarly held that "affirmative misrepresentations" about the deportation consequences of a guilty plea render assistance constitutionally deficient under *Strickland*.  *Akinsade*, 686 F.3d at 251 (noting that the district court had found the defendant's attorney to have rendered deficient performance); *United States v. Akinsade*, Crim. No. DKC-00-099 (D. Md. Aug. 4, 2009) (ECF No. 23) (Order denying writ of error *coram nobis* for lack of prejudice; finding counsel's performance deficient).  In *Akinsade*, the defendant's attorney had apparently relied on an outdated version of 8 U.S.C. § 1101(a)(43)(M)(i) to advise the defendant that he would not be pleading guilty to an aggravated felony; thus, he would not be deported.  *Akinsade*, 686 F.3d at 250; *Akinsade*, Crim. No. DKC-00-099 (D. Md. Aug. 4, 2009) (ECF No. 26 at 3)(hearing transcript).

uncertain[,] . . . a criminal defense attorney need do no more
than advise a noncitizen client that pending criminal charges
may carry a risk of adverse immigration consequences." *Id*. at
369, 130 S. Ct. at 1483.  The *Padilla* Court concluded that 8
U.S.C. § 1227(a)(2)(B)(i), which provides for the deportation of
"[a]ny alien who at any time after admission has been convicted
of a violation of (or a conspiracy or attempt to violate) any
law or regulation of a State, the United States or a foreign
country relating to a controlled substance . . . , other than a
single offense involving possession for one's own use of 30
grams or less of marijuana," was sufficiently clear that
Padilla's counsel "could have easily determined that his plea
would make him eligible for deportation simply from reading the
text of the statute." *Id*. at 368, 130 S. Ct. at 1483.

Similarly, here, 8 U.S.C. § 1227(a)(2)(A)(iii) clearly
states that "[a]ny alien who is convicted of an aggravated
felony at any time after admission is deportable."  The problem,
however, is determining whether the offense at issue is an
"aggravated felony," which, in this case, turns on whether the
offense involved fraud or deceit. *See Padilla*, 559 U.S. at 377,
130 S. Ct. at 1488 ("As has been widely acknowledged,
determining whether a particular crime is an 'aggravated felony'
. . . is not an easy task.")(Alito, J., concurring in the
judgment).  Nonetheless, had Ward advised Swaby under the

18

correct version of 18 U.S.C. § 2320(a)(1), he would have
realized that Swaby was pleading guilty to an offense involving
deceit and would be deportable as an "aggravated felon"; Ward's
attempts to avoid a plea under the amended § 2320(a)(2) shows
that he was aware of the consequences of pleading to an offense
involving deceit.  Although Ward had informed Swaby that
Berlin's opinions "were not writ in stone" and that removal
might occur, Plea Tr. at 25:4-8, the essence of Ward's advice
was that (1) a sentence of 364 days would not trigger
deportation, and (2) pleading guilty to § 2320(a)(1) reduced the
risk of deportation because the statute lacked the deception
required for removal under 8 U.S.C. § 1101(a)(43)(M)(i).  Ward's
advice--and his reliance on the wrong version of the statute--
was clearly incorrect; a simple check of the effective date of
§ 2320(a)(1) would have revealed his error.  Accordingly, Swaby
has established deficient performance under *Strickland*.

   B.   Prejudice

   To show prejudice, Swaby must demonstrate a "reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."
*Strickland*, 466 U.S. at 694.  In the context of a guilty plea,
he "must demonstrate that but for his counsel's error, there is
a reasonable probability that he would not have pled guilty and
would have insisted on going to trial."  *Akinsade*, 686 F.3d at

19

253 (*citing Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

"A defendant may be unable to show prejudice if at the Rule 11 [plea] proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment."  *Id.*; *United States v. Hernandez-Monreal*, 404 F. App'x 714, 715 (4th Cir. 2011)(unpublished). "[S]pecificity and breadth of the district court's admonishment are important considerations in deciding whether the defendant is prejudiced"; a "general" and "equivocal" admonishment by the district court is insufficient to correct "counsel's affirmative misadvice that is clearly contrary to law."  *Akinsade*, 686 F.3d at 253-54 (granting writ of error *coram nobis* when district court warned defendant that his plea "could" lead to deportation but counsel had advised defendant that his crime was not categorically a deportable offense").[20]

---

[20] The Fourth Circuit emphasized that its decision in *Akinsade* had not imposed any new obligations on district courts in Rule 11 plea proceedings.  686 F.3d at 255.  District courts are not required to be "clairvoyant" or "guess" about the accuracy of counsel's advice regarding the consequences of a guilty plea. *Id.*  Rather, the overall focus must be on the prejudice arising from counsel's deficient performance."  *Id.*  When "a district court's admonishment so happens to correct the deficient performance then there is no prejudice; however, if there is no correction, then our scrutiny is not directed toward the district court but appropriately to the constitutional offender."  *Id.*

Swaby analogizes this case to *Akinsade*.  In *Akinsade*, the district court had advised the defendant that he "could be deported" when it informed him of several potential consequences:

> [P]eople who are found guilty of felonies, often lose their right to vote, certain professional licenses may be denied them, may not be able to serve on a jury. And I know felons can't possess firearms. Certain jobs may be denied you.
>
> If you are on parole or probation with another system, that can be affected. Or if you are not a citizen, you could be deported. All of these things could be triggered by being found guilty of a felony. Do you understand that?

*Id*. at 250.  The defendant had responded, "Yes."  *Id*.  In finding this insufficient, the Fourth Circuit noted that cases in which an admonition had cured counsel's misadvice, the district court had "inquired into whether the defendant understood [a] *specific* warning pertaining to deportation."  *Id*. at 254 n.6 (citing cases).  For example, in *Hernandez–Monreal*, 404 F. App'x at 715, the Fourth Circuit held that a defendant had not established prejudice when his attorney had failed to advise him about deportation consequences but, in response to the district court's inquiry, the defendant had indicated that he understood that his plea could "make it difficult, if not impossible, for [him] to successfully stay legally in the United States."  In *United States v. Cruz-Veloz*, No. CRIM. 07-1023, 2010 WL 2925048, at *3 (D.N.J. July 20, 2010), the defendant had

not established prejudice when his counsel allegedly failed to advise him about deportation consequences because, during the plea colloquy, the defendant stated that he understood the court's warning that "I think you will subject yourself, upon this conviction, to being deported." Similarly, in *Gonzalez v. United States*, No. 08 CR. 146 (AKH), 2010 WL 3465603, at *1 (S.D.N.Y. Sept. 3, 2010), the district court found an absence of prejudice when, during the plea colloquy, it had informed the defendant that "[o]ne possibility of your pleading guilty, if you do plead guilty, is that you could be deported from the United States," and "[t]here's very serious consequences to pleading guilty. It's the same as if a jury finds you guilty. One aspect of it is deportation." Both times, the court asked the defendant whether he understood, to while he replied "[y]es." *Id.*

Here, this Court specifically asked Swaby during the plea colloquy whether he understood that his guilty plea could "lead to [his] deportation or removal from the United States," to which Swaby had responded, "[y]es." Plea Tr. at 8:22-9:3. The Court again emphasized that deportation was possible when it informed Swaby of several consequences of pleading guilty: ". . . and, as I indicated to you, Mr. Swaby, a felony conviction may mean that you will be removed from the United States." *Id.* at 19:23-20:11. Again, Swaby responded that he understood the

consequences.  *Id.* at 20:11-14.  Finally, in an exchange between Ward and the Court, for which Swaby had been present, the Court stated that Swaby must "enter[]the [plea] agreement" with the understanding that there was a risk of deportation.  *Id.* at 25:8-15.  Taken together, these warnings were sufficient to overcome any misunderstanding that may have arisen about the likelihood of deportation.[21]  *See Gonzalez*, 2010 WL 3465603, at *1.  Accordingly, Swaby has not demonstrated prejudice under *Strickland*; his petition will be denied.

III. Conclusion

For the reasons stated above, Swaby's petition for a writ of error *coram nobis* will be denied.

_8/24/15_
Date

_[signature]_
William D. Quarles, Jr.
United States District Judge

---

[21] Additionally, though not dispositive but buttressing the Court's finding, Swaby's plea agreement had informed him that "no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status." Plea at 3. *Cf. Akinsade*, 686 F.3d at 250 (plea agreement did not state whether deportation was mandatory or possible).